372 P.2d 128

STATE of New Mexico, Plaintiff-Appellee,

v.

H. W. CRAIG, Defendant-Appellant.

No. 6902.

Supreme Court of New Mexico.

June 5, 1962.

Robert W. Ward, Lovington, for defendant-appellant.

Earl E. Hartley, Atty. Gen., Santa Fe, Carl P. Dunifon and Mark C. Reno, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

CHAVEZ, Justice.

Appellant, H. W. Craig, was convicted by a jury of selling property which he did not own and which he had not been given the right to sell in violation of § 40–21–40, N.M.S.A., 1953 Comp. From the judgment and sentence he prosecutes this appeal.

Appellant, under a written contract, was purchasing a certain lot in Hobbs, New Mexico, upon which there was a frame house. Appellant had intended to construct a woodwork shop on the lot and attach it to the house. After purchasing the lot and frame building, appellant was unable to obtain a building permit to add to or extend the frame building and was told by the building inspector that he would have to construct a fireproof building, such as a block concrete building, because the premises were in a fire zone. Appellant then consulted counsel and was advised that, since he intended to build a block building on the lot, if he would make the monthly payments provided for in the contract, he had the right to sell the frame building. Appellant sold the frame building for $2000 and thereafter was charged with the sale of the frame house without right in violation of § 40–21–40, supra.

We might add that the lot in question is owned by Elizabeth Manley, a widow, and Inza Jane Manley Adams. Cecil P. Stracener entered into a contract to purchase the lot from the ladies Manley and Adams, and thereafter Stracener moved the frame house onto the lot. Subsequently, Stracener and wife entered into a written contract for the sale of the lot to appellant. Before selling and moving the frame house off the premises, appellant contacted Mrs. Adams, who consented to appellant's selling the frame house.

The only question presented is whether the trial court committed error in refusing to grant appellant's requested instruction to the effect that intent had to be proved beyond a reasonable doubt before appellant could be convicted.

The trial court gave the following instructions:

"5. The Statute of the State of New Mexico upon which prosecution as to Count Two is based, except as to punishment, reads as follows:

"Any person who sells or who offers to knowingly sell any property of which he is not the owner, or which he has not been given the right to sell shall be deemed guilty of a felony and shall be punished as provided by law.

"6. If you believe from the evidence in this case beyond a reasonable doubt that the defendant, in Lea County, New Mexico, on or about the 22nd day of June, 1957, or at any other time within three years next prior to April 21, 1959, did wilfully and knowingly sell property of which he was not the owner, or which he had not been given the right to sell, then you will find him guilty as charged in Count Two of the

Information; otherwise, you will acquit him.

\* \* \* \* \* \*

"9. KNOWINGLY means with knowledge of the nature of the act done.

"10. WILFULLY means the doing of an act knowingly and intentionally and when it is not the result of accident or misfortune.

\* \* \* \* \* \*

"12. Before you would be warranted in returning a verdict of guilty in this case as to Count Two, the State must prove to your satisfaction and beyond a reasonable doubt the following material allegations of the Information:

"(a) That the defendant, H. W. Craig, did unlawfully and feloniously sell property of which he was not the owner, or which he had not been given the right to sell.

"(b) That said act of selling was done wilfully and knowingly, as those terms are defined elsewhere in these instructions.

"(c) That said act of selling occurred in Lea County, New Mexico, on the 22nd day of June, 1957, or upon some other date within three years next preceding the filing of the Information in this case, which was filed on April 21, 1959.

"So, in this case, if the State has proved to your satisfaction and beyond a reasonable doubt each and all of the material allegations of the Information outlined above, then you should find the defendant guilty as charged; but on the other hand, if you have a reasonable doubt as to the truth of any one or more or all of the material allegations above, then you should acquit the defendant of the charge contained in the Information."

Section 40–21–40, supra, which appellant was charged with violating, provides:

"40–21–40. Sale of property without right—Penalty.—Any person who sells or who offers to knowingly sell any property of which he is not the owner, or which he has not been given the right to sell shall be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment at hard labor in the penitentiary for not less than one [1] year nor more than ten [10] years, or shall at the discretion of the court be fined not less than five hundred dollars [$500] nor more than five thousand dollars [$5000] and costs of prosecution; a corporation, joint stock company, copartnership, trust, or other association shall be deemed a person as herein contemplated and subject to fine and costs upon conviction."

Appellant presents the following question: Can a person be guilty of violating § 40–21–40, supra, if he, in fact, had no criminal intent and if the issue of criminal intent is not submitted to the jury?

The trial court instructed the jury that if appellant wilfully and knowingly sold the property involved, that he is guilty of the crime charged. Appellant's requested instruction raises the defense that appellant could not be convicted unless the jury found beyond a reasonable doubt that appellant knew that he had no right to sell the frame house.

Appellant also contends that the situation was made worse by the trial court's instruction No. 13, which instructed the jury that appellant could not sell the house off the property, or by any such sale reduce the existing improvements, without the consent of the Straceners. Appellant argues that there is evidence upon which the jury could have found that appellant did have the right to make the sale.

Appellant at all times admitted that he made the sale of the frame house and knew that he had done so. His defense was that he sought and obtained the advice of two attorneys, one of them being the attorney who drafted the contract of purchase between the Straceners and appellant, and acting on the advice of counsel, he thought that he had the right to sell the frame house.

This court, on two occasions, has considered the statute in question. State v. Blevins, 40 N.M. 367, 60 P.2d 208, and State v. Hughes, 43 N.M. 109, 86 P.2d 278. In State v. Blevins, supra, the defendant was convicted of selling " * * * one neat cattle of the property of R. L. Durham, * * * contrary to the provisions of Section 35–1617, N.M.S.A., 1929 Comp." (§ 40–21–40, N.M.S.A., 1953 Comp.) Defendant contended that he should have been prosecuted under § 35–2405 of the 1929 Compilation, which was a more specific statute making it a crime to knowingly sell cattle. In that case this court said:

"It will be observed from a comparison of so much of these acts as is copied supra that both indict the same offense; namely, a sale of property not owned by the seller. We attach no significance to the fact that the animal statute uses the term 'knowingly' in connection with the sale prohibited, whereas the other uses that word only in connection with prohibiting the offering for sale. Certainly no conviction could be had or sustained under either statute if the violation were not shown to be willful."

The State argues that under the language of the statute a specific intent is not required and directs our attention to State v. Alva, 18 N.M. 143, 151, 134 P. 209, wherein it is said:

"In connection with the general rule, however, it must be borne in mind that the Legislature may forbid the doing of an act and make its commission criminal without regard to the intent of the doer, and if such an intention appears, the courts must give it effect although the intention may have been innocent."

■ Whether a criminal intent is to be regarded as essential is a matter of construction. In State v. Lawson, 59 N.M. 482, 286 P.2d 1076, we quoted from State v. Shedoudy, 45 N.M. 516, 524, 118 P.2d 280, 285, as follows:

"Generally speaking, when an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, although the terms of the statute do not require it. State v. Blacklock, 23 N.M. 251, 167 P. 714; Smith v. State, 223 Ala. 3:6, 136 So. 270; State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938, 103 A.L.R. 1301; Youngs Rubber Corp. v. C. I. Lee & Co., 2 Cir., 45 F.2d 103. But the legislature may forbid the doing of an act and make its commission criminal, without regard to the intent with which such act is done; but in such case it must clearly appear from the Act (from its language or clear inference) that such was the legislative intent. Masters v. United States, 42 App.D.C. 350, Ann.Cas.1916A, 1243.

"It follows that whether a criminal intent is to be regarded as essential, is a matter of construction, to be determined from a consideration of the matters prohibited, and the language of the statute, in the light of the common law rule. State v. Blacklock, supra; State v. Hefflin, supra; Youngs Rubber Corp. v. C. I. Lee & Co., supra; 22 C.J.S., Criminal Law, § 30; 14 A.J., Criminal Law, Sec. 24."

The Lawson case involved Ch. 63, Laws of 1925, entitled "An Act Defining the Crime of Making, Causing to be Made or Processing Any Implements or Things Adapted, Designed or Commonly Used for the Commission of Burglarly, Larceny, Safe-Cracking or Other Crime and Providing a Penalty Therefor" and we held that criminal intent was an element of the crime defined by the Act. In that case the trial court instructed the jury that specific intent was an element of the crime which the State must prove beyond a reasonable doubt.

■ There is no language or inference in § 40–21–40, supra, clearly showing that criminal intent is not required. A consideration of the matter prohibited leads us to the conclusion that the legislature did not intend the offense to be one of *malum*

*prohibitum.* We believe that the statute in question demands the inclusion of intent as an element of the crime of which appellant was convicted, and that the jury should have been instructed that criminal intent was an element of the crime which the State must prove beyond a reasonable doubt.

The general rule at common law was that *scienter* was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did not in terms include it. However, there was a modification of this rule in respect to prosecution under statutes which are in the nature of police regulations, where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of *mala in se.* United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604. That case and United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619, are authority in those cases dealing with regulatory offenses.

The rule in the case before us is stated in Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, wherein the court quoted from People v. Flack, 125 N.Y. 324, 334, 26 N.E. 267, 270, 11 L.R.A. 807 as follows:

"It is alike the general rule of law, and the dictate of natural justice, that to constitute guilt there must be not only a wrongful act, but a criminal intention. Under our system, (unless in exceptional cases,) both must be found by the jury to justify a conviction for crime. However clear the proof may be, or however incontrovertible may seem to the judge to be the inference of a criminal intention, the question of intent can never be ruled as a question of law, but must always be submitted to the jury. Jurors may be perverse, the ends of justice may be defeated by unrighteous verdicts; but so long as the functions of the judge and jury are distinct, the one responding to the law, the other to the facts, neither can invade the province of the other without destroying the significance of trial by court and jury. * * *"

See also Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228.

The case is reversed with direction to set aside the judgment and sentence and grant appellant a new trial.

IT IS SO ORDERED.

CARMODY and MOISE, JJ., concur.

COMPTON, C. J., and NOBLE, J., not participating.