2001-NMCA-057

30 P.3d 387

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Frank HERNANDEZ, Defendant–Appellant.**

Nos. 21,119, 21,120.

Court of Appeals of New Mexico.

June 22, 2001.

Certiorari Denied, No. 27,025, Aug. 6, 2001.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Thomas DeMartino, Assistant Public Defender, Albuquerque, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} This case presents an issue of first impression in New Mexico: Whether the offense/conviction chronological sequence required by *State v. Linam*, 93 N.M. 307, 600 P.2d 253 (1979) and *Koonsman v. State*, 116 N.M. 112, 860 P.2d 754 (1993) for imposition of habitual offender penalties applies to drunk driving sentencing under NMSA 1978, § 66–8–102(E), (F), (G) (1999). We hold that it does not, and affirm Defendant's sentence and judgment as a fourth degree felony pursuant to Section 66–8–102(G).

## FACTS AND PROCEEDINGS

{2} There is no conflict concerning the operative facts. Frank Hernandez (Defendant) was indicted on January 29, 1999, for aggravated driving while under the influence of alcohol (DWI), reckless driving, and speeding following an incident which occurred on December 12, 1998. This case was filed as Doña Ana County Cause No. CR–99–67. While this case was pending, Defendant was arrested and indicted for DWI and other traffic violations for an incident which occurred on February 8, 1999. This second case was filed as Doña Ana County Cause No. CR–99–138.

{3} Defendant entered into a separate "DWI Repeat Offender Plea And Disposition Agreement" in each of the cases on August 4, 1999. In CR–99–67, Defendant agreed to plead guilty to the December 12, 1998 occurrence of DWI and also agreed to admit that he had been validly convicted of aggravated DWI on August 26, 1994, for an offense committed the same day. He also agreed

that he had been convicted of DWI on September 13, 1994, for an incident which occurred on August 19, 1994. In CR–99–138, Defendant agreed to plead guilty to the February 1999 offense as well as the prior DWI convictions listed above. In addition, Defendant agreed that he had been validly convicted of aggravated DWI in CR–99–67. As part of the plea agreement, the State and Defendant both reserved the "right to appeal the ruling of the trial court concerning the determination of the number of countable prior DWI convictions for enhancement purposes."

{4} After receiving written and oral argument, the trial court entered an order in each case deciding that "crime-convictions sequence for DWI cases do not apply for purposes of enhancement." As a result, in Cause No. CR–99–67, the trial court treated the aggravated DWI as a third conviction and sentenced Defendant to a term of 364 days and a fine of $750 with ninety days to be served in the Doña Ana County Detention Center and the remainder suspended. In Cause No. CR–99–138, the plea was treated as a fourth conviction and Defendant was sentenced as a fourth degree felon, pursuant to Section 66–8–102(G), to a term of eighteen months and one year of parole thereafter.

## DISCUSSION

{5} "Interpretation of a statute is an issue of law, not a question of fact. We review questions of law de novo." *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). When interpreting a statute we must ascertain and give effect to the intent of the legislature. *Id.* "[W]e look to the object the legislature sought to accomplish and the wrong it sought to remedy." *Id.* (internal quotation and citation omitted).

{6} Defendant maintains that under the *Linam/Koonsman* crime-conviction sequence schema, his conviction for the February 1999 DWI should be treated as a second offense for purposes of imposing any enhanced punishment. If we were dealing with a non-DWI felony offense, he would probably be correct. Defendant's offenses and convictions can be charted as follows:

| | Offense Date | Conviction Date |
|---|---|---|
| 1. | August 26, 1994 | August 26, 1994 |
| 2. | August 19, 1994 | September 13, 1994 |
| 3. | December 12, 1998 | August 4, 1999 |
| 4. | February 8, 1999 | August 4, 1999 |

Applying the strict holding in *Koonsman* that "not only must all prior convictions precede commission of the principal offense, but each offense and conviction must occur in chronological sequence," *id.* at 113, 860 P.2d at 755, it is accurate to assert that there was only one crime-conviction (the August September 1994 offense and conviction) in proper sequence prior to the February-August 1999 offense and conviction. The August 26, 1994 crime-conviction cannot be counted because it fell between the August 19 offense and the related September 1994 conviction. The December 1998 offense cannot be counted because there was no conviction for it before the February 1999 offense was committed.

{7} This analysis is consistent with the result reached in *Koonsman* where a September 1966 conviction for a November 1965 offense could not be counted for enhancement purposes because the November offense fell between an offense in April 1965 and the resultant January 1966 conviction for that April offense. *Id.* at 114, 860 P.2d at 756.

{8} Defendant's argument is straightforward. He asserts that there is nothing to distinguish the DWI sentence enhancement statutes from the felony habitual offender statute either as to structure or the policy interests served by increasing punishment for repeated offenses. Therefore, Defendant argues, given the strength of the *Linam /Koonsman* holdings in New Mexico sentencing law, the same approach should be applied.

{9} There is some indication that New Mexico courts have operated on the assumption that *Linam/Koonsman* does apply to DWI sentencing. For example, in the consolidated cases denominated *State v. Anaya*, 1997–NMSC–010, ¶ 5, 123 N.M. 14, 933 P.2d 223, our Supreme Court noted that the State had proven to the trial court that one of the defendants "had ... four prior DWI convictions in sequence within the meaning of *State*

*v. Linam*[.]" One of Anaya's arguments in the case was that the State had failed to prove three prior DWI convictions in sequence as against him "in order to enhance the charges to a felony." *Anaya*, 1997–NMSC–010, ¶ 7, 123 N.M. 14, 933 P.2d 223. Without discussing the *Linam/Koonsman* issue further, the Supreme Court affirmed Anaya's sentence for felony DWI. Interestingly, in her dissent, Justice Minzner stated that she felt Anaya should be resentenced for misdemeanor DWI because the State "conceded that it failed to prove three prior DWI convictions in sequence." *Anaya*, 1997–NMSC–010, ¶ 73, 123 N.M. 14, 933 P.2d 233 (Minzner, J., concurring in part and dissenting in part). Because there is no other discussion, substantive or otherwise, about the issue in *Anaya*, the case provides no guidance as to the Supreme Court's view of the issue.

{10} We start our analysis with the legislation, noting that the DWI and habitual offender statutes are structured somewhat similarly. The felony habitual offender statute currently provides in pertinent part:

A.  For the purposes of this section, "prior felony conviction" means:

(1) a conviction for a prior felony committed within New Mexico whether within the Criminal Code or not; or

(2) any prior felony for which the person was convicted other than an offense triable by court martial if:

(a) the conviction was rendered by a court of another state, the United States, a territory of the United States or the commonwealth of Puerto Rico;

(b) the offense was punishable, at the time of conviction, by death or a maximum term of imprisonment of more than one year; or

(c) the offense would have been classified as a felony in this state at the time of conviction.

B.  Any person convicted of a noncapital felony ... who has incurred one prior felony conviction which was part of a separate transaction or occurrence or conditional discharge ... is a habitual offender and his basic sentence shall be increased by one year, and the sentence imposed by this subsection shall not be suspended or deferred.

C.  Any person convicted of a noncapital felony ... who has incurred two prior felony convictions which were parts of separate transactions or occurrences or conditional discharge ... is a habitual offender and his basic sentence shall be increased by four years, and the sentence imposed by this subsection shall not be suspended or deferred.

D.  Any person convicted of a noncapital felony ... who has incurred three or more prior felony convictions which were parts of separate transactions or occurrences or conditional discharge ... is a habitual offender and his basic sentence shall be increased by eight years, and the sentence imposed by this subsection shall not be suspended or deferred.

NMSA 1978, § 31–18–17 (1993). The DWI penalty statute currently provides:

E.  Every person under first conviction under this section shall be punished, notwithstanding the provisions of Section 31–18–13 NMSA 1978, by imprisonment for not more than ninety days or by a fine of not more than five hundred dollars ($500), or both; provided that if the sentence is suspended in whole or in part or deferred, the period of probation may extend beyond ninety days but shall not exceed one year. Upon a first conviction under this section, an offender may be sentenced to not less than forty-eight hours of community service or a fine of three hundred dollars ($300). The offender shall be ordered by the court to participate in and complete a screening program described in Subsection H of this section and to attend a driver rehabilitation program for alcohol or drugs, also known as a "DWI school", approved by the traffic safety bureau of the state highway and transportation department and also may be required to participate in other rehabilitative services as the court shall determine to be necessary. In addition to those penalties, when an offender commits aggravated driving while under the influence of intoxicating liquor or drugs, the offender shall be sentenced to not less than forty-eight consecutive

hours in jail. If an offender fails to complete, within a time specified by the court, any community service, screening program, treatment program or DWI school ordered by the court, the offender shall be sentenced to not less than an additional forty-eight consecutive hours in jail. Any jail sentence imposed under this subsection for failure to complete, within a time specified by the court, any community service, screening program, treatment program or DWI school ordered by the court or for aggravated driving while under the influence of intoxicating liquor or drugs shall not be suspended, deferred or taken under advisement. On a first conviction under this section, any time spent in jail for the offense prior to the conviction for that offense shall be credited to any term of imprisonment fixed by the court. A deferred sentence under this subsection shall be considered a first conviction for the purpose of determining subsequent convictions.

F. A second or third conviction under this section shall be punished, notwithstanding the provisions of Section 31–18–13 NMSA 1978, by imprisonment for not more than three hundred sixty-four days or by a fine of not more than one thousand dollars ($1,000), or both; provided that if the sentence is suspended in whole or in part, the period of probation may extend beyond one year but shall not exceed five years. Notwithstanding any provision of law to the contrary for suspension or deferment of execution of a sentence:

(1) upon a second conviction, each offender shall be sentenced to a jail term of not less than seventy-two consecutive hours, forty-eight hours of community service and a fine of five hundred dollars ($500). In addition to those penalties, when an offender commits aggravated driving while under the influence of intoxicating liquor or drugs, the offender shall be sentenced to a jail term of not less than ninety-six consecutive hours. If an offender fails to complete, within a time specified by the court, any community service, screening program or treatment program ordered by the court, the offender shall be sentenced to not less than an additional

seven consecutive days in jail. A penalty imposed pursuant to this paragraph shall not be suspended or deferred or taken under advisement; and

(2) upon a third conviction, an offender shall be sentenced to a jail term of not less than thirty consecutive days and a fine of seven hundred fifty dollars ($750). In addition to those penalties, when an offender commits aggravated driving while under the influence of intoxicating liquor or drugs, the offender shall be sentenced to a jail term of not less than sixty consecutive days. If an offender fails to complete, within a time specified by the court, any screening program or treatment program ordered by the court, the offender shall be sentenced to not less than an additional sixty consecutive days in jail. A penalty imposed pursuant to this paragraph shall not be suspended or deferred or taken under advisement.

G. Upon a fourth or subsequent conviction under this section, an offender is guilty of a fourth degree felony, as provided in Section 31–18–15 NMSA 1978, and shall be sentenced to a jail term of not less than six months, which shall not be suspended or deferred or taken under advisement.

. . . .

M. As used in this section:

. . . .

(2) "conviction" means an adjudication of guilt and does not include imposition of a sentence.

Section 66–8–102(E), (F), (G), (M)(2).

{11} Defendant accurately notes that neither statute contains any language explicitly requiring-or even obviously hinting at-use of a crime-conviction chronological sequence in their application. The dearth of cues in the language of the habitual offender statute is of little moment given the continued vigor of the *Linam/Koonsman* approach. The crime-conviction sequence requirement has been applied consistently in different circumstances and has survived the various amendments of the habitual offender statute to its current form. *See State v. Garcia,* 91 N.M. 664, 665–66, 579 P.2d 790, 791–92 (1978) (ap-

**703**

plying the approach to enhancement from a second degree to a first degree felony for two or more armed robberies); *Linam*, 93 N.M. at 309, 600 P.2d at 255.

{12} The same lack of any hint in the language of the DWI statute is not a logical or compelling reason for extending *Linam /Koonsman* to DWI sentencing, however. Thus, we must examine the statutes for other indications in the language that they should be applied the same way.

{13} We first note that the DWI sentencing statute is phrased in the same way that the habitual offender statute was phrased when *Linam* was decided; that is, using the words "upon conviction" to introduce the enhanced penalty. *See id.* This similarity does not aid in resolving the issue before us, however, because it is clear from the structure of the decision that *Linam* was driven more by the "reform object of the legislation" than by the actual language of the statute. *Id.*

{14} There is one significant difference between the language of the DWI sentencing statute and the habitual offender act. The habitual offender act is applied if a defendant has "prior felony convictions." Section 31–18–17(C), (D). "[P]rior felony conviction" is defined in Section 31–18–17(A) to include felony convictions in New Mexico and other jurisdictions and offenses meeting certain other criteria.

{15} In contrast, the DWI definition of "conviction" does not include any reference to "prior." Rather, it simply stipulates that a conviction "means an adjudication of guilt and does not include imposition of a sentence." Section 66–8–102(L)(2) (1997); now § 66–8–102(M)(2) (1999). This definition was included in Section 66–8–102 as part of the 1988 amendments to the statute. 1988 N.M. Laws, ch. 56, § 8.

{16} In 1988 the legislature also first introduced the concept of a separate punishment for fourth and subsequent convictions as such and changed the opening phrase of the penalty provision to its current form using the word "upon." *Id.*

{17} In sum, while the definition of conviction tends to indicate that no sequence is required, the fact that the legislature adopted language which was cited in *Linam* to support the holding, indicates otherwise.

{18} The language of the statutes is of little aid in resolving the issue. When the language of a statute fails to provide useful guidance as to how the statute should operate or be applied, courts must resort to other indicia of legislative intent. In addition to language, courts may consider the statute's history and background, the object the legislature sought to accomplish and the wrong or evil the statute is designed to remedy. *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768–69, 918 P.2d 350, 354–55 (1996); *Anaya*, 1997–NMSC–010, ¶¶ 28–29, 123 N.M. 14, 933 P.2d 223; *State v. Lara*, 2000–NMCA–073, ¶ 6, 129 N.M. 391, 9 P.3d 74. We examine the policy objectives furthered by our DWI statutes and determine whether they are compatible with or would be served by application of the *Linam/Koonsman* rule.

{19} The ultimate purpose of the DWI laws is to protect the health, safety, and welfare of the public by stopping people from driving under the influence of drugs and alcohol. *State v. Johnson*, 2001–NMSC–001, ¶¶ 6, 17, 130 N.M. 6, 15 P.3d 1233. New Mexico courts have recognized that the public interest in deterring DWI is compelling enough to make it a "strict liability crime." *Id.* ¶ 17 (citing *State v. Harrison*, 115 N.M. 73, 77–78, 846 P.2d 1082, 1086–87 (Ct.App. 1992)). As a strict liability crime, a person can be held criminally accountable for DWI without any showing of criminal intent.

{20} Accountability under the DWI statute and the motor vehicle code takes various forms. One, of course, is the usual criminal sanction of incarceration and fine, along with the usual probation parole adjuncts of criminal sentencing. Another, generally not found in our criminal sentencing statutes, is treatment and rehabilitation regimens. A third is the loss of one's driver's license for various lengths of time, again tied to the number of convictions a person has or the severity of the offense. NMSA 1978, § 66–5–26 to –30 (1978, as amended through 1999).

{21} As our Supreme Court noted in *Anaya*, the legislature has amended the DWI statute twelve times since 1941, each time

augmenting penalties or adding provisions for court-ordered drug and alcohol screening, treatment, and rehabilitation. *Id.*, 1997–NMSC–010, ¶ 17 n.1, 123 N.M. 14, 933 P.2d 223. The culmination of these legislative efforts was the 1993 amendment which decreased the alcohol concentration level at which a driver was presumed under the influence, defined "aggravated" DWI and set sentencing guidelines for it, and finally, "labeled fourth or subsequent DWI convictions as fourth degree felonies." *Id.* ¶ 16; 1993 N.M. Laws, ch. 66, § 7. All of these statutory changes addressed the driver after arrest; punishing through incarceration and fine or attempting to provide treatment for the underlying drug and alcohol abuse issues. The latest legislative response to DWI addresses the ability of the driver to start and operate the vehicle so that the offense cannot be committed. Section 66–8–102(I) (providing that under certain circumstances ignition interlock devices may be required on all motor vehicles owned by an offender).

{22} One characteristic of the DWI sentencing structure has remained the same throughout: punishment increases for second or subsequent convictions. Over the years, punishment has increased overall and the concept of subsequent convictions has been more finely tuned, but the notion of increasing consequences for DWI has remained intact.

{23} At the same time, again as noted by our Supreme Court in *Anaya*, the basic offense has not changed. That is, the offense has been and continues to be defined as: "It is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle within this state." Section 66–8–102(A); *Anaya*, 1997–NMSC–010, ¶ 18, 123 N.M. 14, 933 P.2d 223. Sentencing is thereafter set by and tied to the number of times an offender has been convicted of the offense. Section 66–8–102.

{24} Would this self-contained system of DWI accountability be furthered or hindered by applying the *Linam/Koonsman* rule? We believe it would be hindered, and therefore *Linam/Koonsman* should not be applied to DWI sentencing.

{25} The crime-conviction chronological sequence rule of *Linam/Koonsman* is based on a rather specialized view of the use of criminal punishment as a deterrent to further crimes. The underlying notion of the rule is that punishment beyond that provided for a particular crime is not merited simply because an offender has " 'sinned more than once.' " *Koonsman*, 116 N.M. at 113, 860 P.2d at 755 (quoting Cynthia L. Sletto, Annotation, *Chronological or Procedural Sequence of Former Convictions as Affecting Enhancement of Penalty Under Habitual Offender Statutes*, 7 A.L.R. 5th 263, § 2(a) at 288 (1992)). Rather, additional punishment is merited because the offender has committed another crime even though he or she has been given "the opportunity to reform under threat of more severe penalty which serves to deter." *Linam*, 93 N.M. at 309, 600 P.2d at 255. Thus, the repeat offender deserves extra punishment more because he or she threw away an opportunity to reform than because he or she has offended again.

{26} This rationale does not readily apply to DWI offenses. As noted, DWI is a strict liability crime. It requires no intent. Thus, the notion of extra punishment for one's failure to reform does not apply. Punishment is tied instead to recurrence of the offense. The increase in punishment with repetition is most appropriately viewed as pure punishment for committing a strict liability offense. Deterrence flows from the certainty of increasing pure punishment rather than from the missed opportunity to reform.

{27} This view of DWI incarceration as pure punishment is reinforced by the inclusion in the DWI statute of separate provisions for treatment of the underlying condition which contributes to the offense. Starting with the first conviction, DWI offenders must participate in and complete a screening program for drug and alcohol problems as well as attendance at "DWI school." Sentencing for all offenses must include a screening and treatment regimen, and failure to complete a treatment program results in additional mandatory incarceration. Section 66–8–102(E), (F), (H).

{28} There are no comparable provisions in the general criminal sentencing statute or

in the habitual offender act. *See* NMSA 1978, § 31–18–15 (1999). Since 1990, NMSA 1978, § 31–18–22 (1990) has provided for screening and treatment in a "special incarceration alternative program" run and controlled by the corrections department. Participation in the program is limited, however, and is not designed to reach every convicted criminal the way the DWI screening is intended to affect all DWI offenders. Thus, the deterrence and reform theory of the *Linam/Koonsman* rule is not undercut by the operation of Section 31–18–22. In contrast, the comprehensive-if not effective-reach of DWI screening and treatment indicates that reform is dealt with directly, obviating any need to import the *Linam/Koonsman* approach to the DWI arena.

{29} Finally, there is another feature that distinguishes the DWI progressive punishment schema from the habitual offender act. Enhancement under the habitual offender act is a set time ranging from one to eight years imposed over and above the sentence for the principal crime. An offender thus can receive an habitual sentence which is much more severe than the sentence for principal crime committed. For example, a fourth degree felony could result in a suspended sentence of eighteen months for the principal crime and an eight year habitual offender enhancement which "shall not be suspended or deferred." Section 31–18–17(D) and Section 31–18–15(A)(6). In this sense, the habitual offender statute is highly punitive and the rationale of *Linam/Koonsman* makes sense.

{30} The DWI sentencing schema simply does not carry the same punitive baggage. DWI sentences based on repeat convictions do not impose a separate sentence on top of a basic sentence. Instead, repetition of offense is accounted for by increasing the basic punishment per numbered conviction. The *Linam/Koonsman* idea of punishing separately for the failure to reform simply does not fit easily into the DWI sentencing format.

{31} Given these differences between the DWI statute and the habitual offender act, and heeding Judge Learned Hand's suggestion to "put ourselves in the place of those who uttered the words," we hold that the legislature did not intend the *Linam/Koonsman* rule to apply to DWI sentencing. *Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir. 1944).

{32} Defendant urges us to apply the rule of lenity. We decline to do so because we do not perceive in the statute the sort of "insurmountable ambiguity" normally required for application of the rule. *State v. Ogden,* 118 N.M. 234, 242, 880 P.2d 845, 853 (1994).

## CONCLUSION

{33} For the reasons stated, we affirm Defendant's conviction for felony fourth degree DWI.

{34} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Judge, M. CHRISTINA ARMIJO, Judge.