2005-NMCA-031

107 P.3d 547

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Adrian GONZALEZ, Defendant–Appellant.**

**No. 23,711.**

Court of Appeals of New Mexico.

Feb. 7, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Arthur W. Pepin, Elizabeth Blaisdell, Assistant Attorneys General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Jennifer Byrns, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} The issues in this case are (1) whether the crime of bringing contraband into a jail in violation of NMSA 1978, § 30–22–14(B) (1976), is a strict liability offense and (2) whether fundamental error was committed when the district court failed to include a mental state as an essential element of the crime in its instructions to the jury. We hold that an essential element of the crime is knowing possession of the contraband and that failing to include this essential element

in the jury instructions constituted fundamental error. We therefore reverse and remand for a new trial.

**BACKGROUND**

{2} A criminal information charged that on November 17, 2001, Defendant "did intentionally carry [c]ocaine into the confines of the Otero County Detention Center, a county jail," or in the alternative, that he "did intentionally have in his possession [c]ocaine, a controlled substance, knowing or believing it to be [c]ocaine" in violation of Section 30–22–14(B) and NMSA 1978, § 30–31–23(D) (1990).

{3} The evidence at trial was that Defendant was an inmate at the Otero County Detention Center (Detention Center). On November 17, 2001, Defendant returned to the Detention Center from his work release assignment. As Defendant changed out of his work clothes, a detention officer noticed that he was clutching a clear plastic bag containing a clear liquid. The officer confiscated the bag. Subsequent testing revealed that the liquid in the bag contained cocaine.

{4} Defendant testified he stopped by the home of a relative on his way back to the Detention Center, where he filled up the baggie with water. To the best of his knowledge, the baggie he brought into the Detention Center contained only water. The Detention Center employs a zero tolerance policy with regard to the work release program and anyone on work release is subject to random drug testing. Defendant's plan was to have the baggie of water with him in the locker area or his pod so that if he was selected for a random drug test, he would use it instead of urine.

{5} Defendant felt he needed to do this because he had already been subject to two random drug tests while on work release. The first test was positive for drugs, so Defendant requested a retest be performed by a certified medical officer instead of a regular detention employee. The retest was negative for the presence of drugs. The second random sample also tested positive for drugs, and Defendant again requested a retest by a certified medical officer. However, the second time, the retest was positive for drugs. When Defendant tested positive for drugs the second time, the Detention Center called

his employer, and he lost his job. Defendant was worried that if he tested positive for drugs again, he would lose his current job as well and not be able to provide financial support for his family.

{6} The district court instructed the jury that to find Defendant guilty of bringing contraband into the jail, the state was required to prove the following essential elements beyond a reasonable doubt:

1. The Defendant carried contraband, to wit: cocaine into the confines of the Otero County Detention Center;

2. This happened in New Mexico on or about the 17th day of November, 2001.

{7} The jury was also instructed that it had to find Defendant acted with a general intent as follows:

In addition to the other elements of bringing contraband into a place of imprisonment and possession of cocaine, the [S]tate must prove to your satisfaction beyond a reasonable doubt that [Defendant] acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful. Whether [Defendant] acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, his conduct, and any statements made by him.

The jury found Defendant guilty of bringing contraband into a place of imprisonment, and he appeals.

**DISCUSSION**

**A. Strict Liability Offense**

{8} We review de novo whether Section 30–22–14(B) is a strict liability crime. *See State v. Torres*, 2003–NMCA–101, ¶ 5, 134 N.M. 194, 75 P.3d 410 (stating that analysis of whether unlawful possession of a firearm in a licensed liquor establishment is a strict liability crime involves the construction of a statute, which is reviewed de novo).

{9} A violation of Section 30–22–14(B) is a fourth degree felony. It states, "[b]ringing contraband into a jail consists of carrying

contraband into the confines of a county or municipal jail." *Id.* Section 30–22–14(C)(4) includes cocaine in its definition of "contraband." Defendant argues that commission of the act—bringing contraband into a jail— must be accompanied by a mental state, or mens rea, for the crime to be committed. He further contends that the necessary mental state is knowledge of possession of the contraband. The State responds that Defendant's knowledge is irrelevant, contending that bringing contraband into a jail is a strict liability crime which does not have a mens rea element. For the reasons which follow, we agree with Defendant.

{10} "A crime generally consists of two elements, a physical, wrongful deed (the 'actus reus'), and a guilty mind that produces the act (the 'mens rea')." 21 Am.Jur.2d *Criminal Law* § 126, at 213 (1998); *see State v. Leal,* 104 N.M. 506, 509, 723 P.2d 977, 980 (Ct.App.1986) ("Ordinarily, there are two components to a crime: an intent or mental state plus an overt act."). " 'Mens rea' refers to a mental state ... which expresses the intent necessary for a particular act to constitute a crime." 21 Am.Jur.2d *supra,* at 213; *see State v. Austin,* 80 N.M. 748, 750, 461 P.2d 230, 232 (Ct.App.1969) (stating a "criminal intent ... is a mental state ... [that is] a conscious wrongdoing").

{11} On the other hand, some crimes do not require the existence of a mental state, or mens rea. "A strict liability crime is [a crime] which imposes a criminal sanction for an unlawful act without requiring a showing of criminal intent." *State v. Harrison,* 115 N.M. 73, 77, 846 P.2d 1082, 1086 (Ct.App.1992); *see* Laurie L. Levenson, *Good Faith Defenses: Reshaping Strict Liability Crimes,* 78 Cornell L.Rev. 401, 417 (1993) (stating that a strict liability crime is a crime "for which liability is imposed irrespective of the defendant's knowledge or intentions, that is, crimes without a mens rea requirement"). Even "innocent-minded and blameless people" may be convicted of a strict liability crime. 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.5, at 382 (2d ed.2003).

{12} Section 30–22–14(B) is silent with respect to any required mens rea. However, this does not mean it is a strict liability offense. *See Santillanes v. State,* 115 N.M. 215, 218, 849 P.2d 358, 361 (1993) (stating when a criminal statute is silent about whether a mens rea element is required, we do not assume that the legislature intended to create a strict liability crime). Since at least 1917, we have followed the common law that where an act is prohibited and punishable as a crime, it is construed as also requiring the existence of a criminal intent. *State v. Blacklock,* 23 N.M. 251, 254, 167 P. 714, 715 (1917) ("As a general rule, where an act is prohibited and made punishable by statute, the statute is to be construed in the light of the common law and the existence of a criminal intent is essential." (internal quotation marks and citation omitted)). *See, e.g., Santillanes,* 115 N.M. at 218, 849 P.2d at 361 ("[W]e presume criminal intent as an essential element of the crime unless it is clear from the statute that the legislature intended to omit the mens rea element." (emphasis omitted)); *State v. Craig,* 70 N.M. 176, 180, 372 P.2d 128, 130 (1962) (same); *State v. Shedoudy,* 45 N.M. 516, 524, 118 P.2d 280, 285 (1941) ("Generally ... when an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, although the terms of the statute do not require it." (citation omitted)); *Torres,* 2003–NMCA–101, ¶ 7, 134 N.M. 194, 75 P.3d 410 ("Generally, criminal intent is an element of every crime. If it is not expressly included as an element, we presume an intent requirement.") (internal quotation marks and citations omitted); *State v. Fuentes,* 85 N.M. 274, 276, 511 P.2d 760, 762 (Ct.App.1973) (same); *Austin,* 80 N.M. at 750, 461 P.2d at 232 (same).

{13} The legislature may create a strict liability crime and provide that a violator is guilty even without a criminal intent; however, the legislative intent to do so must clearly appear. *See Santillanes,* 115 N.M. at 218, 849 P.2d at 361 (stating that "it is well settled that we presume criminal intent ... unless it is clear from the statute that the legislature intended to omit the mens rea

element" (emphasis omitted)); *Craig* 70 N.M. at 180, 372 P.2d at 130 (same); *Shedoudy,* 45 N.M. at 524, 118 P.2d at 285 ("But the legislature may forbid the doing of an act and make its commission criminal, without regard to the intent with which such act is done; but in such case it must clearly appear from the Act (from its language or clear inference) that such was the legislative intent."); *State v. Herrera,* 111 N.M. 560, 563, 807 P.2d 744, 747 (Ct.App.1991) (stating that the legislature may create a strict liability crime and provide that a violator is guilty even without a criminal intent; however, "its intention to do so must be manifest in the statute."); *State v. Lucero,* 87 N.M. 242, 244, 531 P.2d 1215, 1217 (Ct.App.1975) (stating that the "courts of this State have long adhered to the common law tradition that criminal intent is an essential element of every crime unless the Legislature expressly declares otherwise"); *Austin,* 80 N.M. at 750, 461 P.2d at 232 (same).

{14} Strict liability crimes are the exception. They are generally recognized under statutes in the nature of regulatory measures and designed to proscribe conduct which seriously threatens public health or safety. *See Santillanes,* 115 N.M. at 221–22, 849 P.2d at 364–65 (stating that strict liability regulatory measures are generally aimed at achieving a societal good, rather than punishing conduct manifesting moral culpability); *Craig,* 70 N.M. at 181, 372 P.2d at 130 (stating that the rule requiring scienter as proof for every crime was modified for certain statutes in the nature of police regulations which seek to achieve a social objective rather than to punish conduct); *State v. Barber,* 91 N.M. 764, 766, 581 P.2d 27, 29 (Ct.App. 1978) (stating that public policy may require punishment even in the absence of criminal intent in certain cases). Generally, the reasoning underlying a strict liability crime is that "the public interest is so compelling, or the potential harm so great, that the public interest must override the individual's interests." *Harrison,* 115 N.M. at 77, 846 P.2d at 1086. For example, we "have recognized that the public interest in deterring [driving while intoxicated] is compelling enough to make it a strict liability crime." *State v. Hernandez,* 2001–NMCA–057, ¶ 19, 130 N.M.

698, 30 P.3d 387 (internal quotation marks and citation omitted). The offense of bringing contraband into a jail lacks the essential characteristics of a strict liability defense. It is not in the nature of a regulatory measure prescribing conduct which seriously threatens public health or safety.

{15} We determine whether a crime requires a criminal intent on a statute-by-statute basis. *See State v. Powell,* 115 N.M. 188, 190, 848 P.2d 1115, 1117 (Ct.App. 1993) ("[A] determination of the state-of-mind element of an offense must be made on a statute-by-statute basis."). In doing so, we may consider the "mental state ordinarily required for crimes of the same nature." *Id.* (stating that to determine the "presumed intent" we "simply look at the particular mental state ordinarily required for crimes of the same nature"). Ultimately, our task is to ascertain "whether there is a clear legislative intent that the [unlawful] act does not require any degree of mens rea." *Herrera,* 111 N.M. at 563, 807 P.2d at 747.

{16} The offense of bringing contraband into a jail is fundamentally a possessory crime; it criminalizes the possession of contraband by anyone who enters a county or municipal jail. *See* § 30–22–14(B). Our courts have "generally presumed that the mental element for [possessory] crimes is just that the possession be intentional—in other words, that the offender have knowledge of the possession." *Powell,* 115 N.M. at 191, 848 P.2d at 1118. For example, NMSA 1978, § 30–7–3(A) (1999), criminalizes the possession of a firearm in any establishment licensed to serve alcohol. Although the statute is silent with respect to the element of mens rea, we held in *Powell* that the offense requires that the accused have knowledge that the object in his possession is a firearm. 115 N.M. at 191, 848 P.2d at 1118; *see Torres,* 2003–NMCA–101, ¶ 9, 134 N.M. 194, 75 P.3d 410 (holding that the accused must know that he is in possession of a firearm but that he is strictly liable if he enters a licensed liquor establishment). Similarly, NMSA 1978, § 30–7–16(A) (2001), criminalizes the possession of firearms by felons. A conviction under this section requires that the accused

knew that the object in his possession was a firearm. *See State v. Haddenham,* 110 N.M. 149, 156, 793 P.2d 279, 286 (Ct.App.1990). Finally, NMSA 1978, § 30–22–16 (1986), criminalizes the possession of a deadly weapon by a prisoner. Although the statute is silent with respect to the mens rea element, the uniform jury instruction for the crime requires the jury to find that the accused possessed a deadly weapon, which in turn requires knowledge of the deadly weapon. UJI 14–2254 NMRA. The use notes accompanying the instruction state that if possession is contested the instruction on possession at UJI 14–130 NMRA should also be given. This instruction requires the jury to find that the accused knew what the object was, knew that it was "on his person or in his presence," and that he "exercis[ed] control over it." *Id.* Based on the mens rea required for these similar crimes, we conclude that the offense of bringing contraband into a jail also has a mens rea essential element: knowledge of the possession.

{17} Although the State correctly points out that important policies are furthered by excluding contraband from our jails, we are not persuaded that these policies support the proposition that the legislature clearly intended the offense of bringing contraband into a jail to be a strict liability crime. Virtually every court which has considered the question has arrived at the same conclusion. *See, e.g., Williams v. State,* 413 So.2d 1263, 1265 (Fla.Dist.Ct.App.1982) (holding that "the trial court erroneously instructed the jury that appellant did not have to have knowledge that she was in possession of the contraband in order to be found guilty of introducing that contraband into a penal institution"); *State v. Strong,* 294 N.W.2d 319, 320 (Minn.1980) (holding that although the statute criminalizing introducing contraband into a correctional facility does not expressly require intent or knowledge, the legislature did not intend to dispense with the requirement of scienter); *State v. Wolfe,* 288 Or. 521, 605 P.2d 1185, 1188 (1980) (stating statute prohibiting possessing, carrying, or having weapons in one's custody and control in a penal institution not meant to include unknowing acts); *see People v. Farmer,* 165 Ill.2d 194, 209 Ill.Dec. 33, 650 N.E.2d 1006,

1012 (1995) (holding possession of contraband in a penal institution is not an absolute liability offense and the appropriate mental element for the crime is knowledge); *Ennis v. State,* 71 S.W.3d 804, 810 (Tex.Ct.App.2002) (holding that to support a conviction for possession of a deadly weapon in a penal institution, the State must show that the accused possessed the weapon knowingly or intentionally). Even *State v. Converse,* 529 So.2d 459 (La.Ct.App.1988), cited by the State in support of its argument that bringing contraband into a jail should be a strict liability offense, analogizes possession of contraband to possession of a controlled substance and recognizes that "[g]uilty knowledge" is required for a conviction. *Id.* at 464–65.

{18} We hold that bringing contraband into a jail is not a strict liability offense. It requires proof beyond a reasonable doubt that an accused entered a jail knowing he possessed the prohibited contraband.

### B. Fundamental Error

{19} Defendant failed to object to the jury instructions as they were given to the jury. Therefore, we review the jury instructions only for fundamental error. *State v. Benally,* 2001–NMSC–033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (stating where error in jury instructions is not preserved, error is reviewed for fundamental error); *see* Rule 12–216 NMRA (issues not preserved below may be reviewed for fundamental error). We first determine " 'whether a reasonable juror would have been confused or misdirected' by the jury instruction." *Benally,* 2001–NMSC–033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (quoting *State v. Cunningham,* 2000–NMSC–009, ¶ 14, 128 N.M. 711, 998 P.2d 176). "[J]uror confusion or misdirection may stem … from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Benally,* 2001–NMSC–033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. Secondly, such error in jury instructions is "fundamental" where "it remains uncorrected [by other instructions], thereby allowing juror confusion to persist." *Id.* ¶ 16.

{20} In this case, the district court failed to instruct the jury on the element of knowledge. As a result, the jury was allowed to find Defendant guilty of bringing contraband into a jail without finding an essential element of the crime: knowledge he possessed the cocaine when he entered the Detention Center. The result was unfair to Defendant and constituted fundamental error. *See State v. Castro,* 2002–NMCA–093, ¶¶ 4, 7, 8, 132 N.M. 646, 53 P.3d 413 (holding, in prosecution for driving with a revoked license, that failure to instruct on essential element that defendant knew her license was revoked, was fundamental error); *Benally,* 2001–NMSC–033, ¶¶ 10, 18–20, 131 N.M. 258, 34 P.3d 1134 (holding that omission of unlawfulness from elements instruction for second degree murder was fundamental error).

{21} The State argues that the failure of the district court to instruct the jury on the requisite knowledge element was harmless error. We disagree. In determining whether fundamental error occurred, we review jury instructions "as a whole and a failure to include an essential element in the elements section may be corrected by subsequent proper instructions that adequately addresses the omitted element." *Cunningham,* 2000–NMSC–009, ¶ 21, 128 N.M. 711, 998 P.2d 176.

{22} In *Cunningham,* our Supreme Court held that the omission of an element of unlawfulness in an instruction on deliberate-intent murder was cured by an instruction on self-defense. *Id.* ¶ 22. Therefore, the Court held that fundamental error had not occurred. *Id.* ¶ 31. The State argues that the omission of the knowledge requirement from the instruction on bringing contraband into a jail was cured by the instruction itself. Because the instruction required the jury to find that Defendant carried cocaine into the Detention Center, the State argues that if the jury believed Defendant's testimony that it was just water it would not have convicted him. We agree that the jury was required to find that Defendant possessed cocaine. However, in making this determination, the jury was presented with conflicting testimony. Defendant testified that it was just water, and a forensic chemist testified that the

liquid contained cocaine. The jury could have reasonably concluded that the liquid did indeed contain cocaine without reaching the question of whether Defendant had knowledge of the cocaine. *Cunningham* is not applicable.

{23} The instruction on general criminal intent was also not sufficient to cure the absence of an instruction on knowledge. The element of general criminal intent is satisfied if the State can "demonstrate[ ] beyond a reasonable doubt that [the accused] purposely performed the act in question." *In re Shaneace L.,* 2001–NMCA–005, ¶ 13, 130 N.M. 89, 18 P.3d 330; *see* UJI 14–141 NMRA; *accord* LaFave, *supra,* § 5.2(e), at 355 (stating that "general intent is only the intention to make the bodily movement which constitutes the act which the crime requires" (internal quotation marks and citation omitted)). However, "[k]nowledge and intent are separate, not synonymous, elements." *State v. Hargrove,* 108 N.M. 233, 236, 771 P.2d 166, 169 (1989). In *Hargrove,* our Supreme Court held that an instruction on general criminal intent was not "sufficient to instruct the jury that knowledge of the prohibited blood relationship is an essential element of incest." *Id.* Similarly, in this case, the instruction on general criminal intent was not sufficient to instruct the jury that Defendant's knowledge of the cocaine he brought into the Detention Center is an essential element of bringing contraband into a jail. Defendant satisfied the general criminal intent element by intentionally carrying the liquid in the plastic bag into the Detention Center. Therefore, the jury could have concluded that Defendant acted intentionally without reaching the question of whether he knew that the liquid contained cocaine.

{24} Unlike the instructions given in *Cunningham,* the instructions given in this case did not adequately describe the offense for which Defendant was charged; the jury could have found Defendant guilty without considering an essential element of the crime. Therefore, we conclude that neither the instruction given on general criminal intent, nor the instruction given on bringing contraband into a jail were sufficient to cure

the absence of an instruction on the knowledge element of the crime.

{25} The State also argues that Defendant is essentially asking for a mistake of fact instruction for which there was no evidentiary support and that the error, if any, was harmless. We disagree. Defendant is simply asking that the jury instructions accurately reflect the crime with which he was charged. We find no support for the proposition that Defendant is asking for a mistake of fact instruction. The harmless-error argument is made on the basis of Defendant's closing argument, which did not specifically urge on the jury any lack of knowledge. However, inasmuch as the jury was not instructed on the element of knowledge, we would not expect Defendant's argument to focus on that element. Because the evidence supported lack of knowledge, we cannot say the error was harmless.

## CONCLUSION

{26} We hold that a conviction for bringing contraband into a jail requires the State to prove that Defendant had knowledge of the contraband he brought into the Detention Center. Further, the district court committed fundamental error by failing to instruct the jury on the knowledge element of the crime. Therefore, we reverse Defendant's conviction and remand for a new trial.

{27} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.