This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                     **NO. 33,065**

**ROBERT MACIAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

The Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Gary K. King, Attorney General
Ralph E. Trujillo, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**CHÁVEZ, Justice.**

{1}      Robert Macias appeals directly to this Court from a life sentence stemming from a conviction of first-degree murder.  Macias was convicted of one count of felony murder, NMSA 1978, § 30-2-1(A)(2) (1994), with the predicate felony of shooting at a motor vehicle resulting in great bodily harm, NMSA 1978, § 30-3-8(B) (1993).  On appeal, Macias raises the following arguments:  (1) testimony by a forensic pathologist who neither performed nor witnessed the victim's autopsy violated the Confrontation Clause, (2) it was prejudicial for the trial court to instruct the jury simultaneously on felony murder and on the predicate felony, (3) the prosecutors committed misconduct, and (4) the cumulative impact of these problems constituted fundamental error.  We reject each of Macias's arguments and affirm his conviction.

**BACKGROUND**

{2}      This case arises from the shooting death of Wilfred Salas, Jr. in 2006.  This is Macias's second conviction for Salas's murder; he was originally convicted in 2007, and this Court vacated that conviction.  *State v. Macias*, 2009-NMSC-028, ¶ 1, 146 N.M. 378, 210 P.3d 804, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

{3}      The facts relevant to the appeal are as follows.  Macias got into an altercation

with some men in a bar on the evening of the murder. His friend Daniel Garcia testified that he took Macias home and that Macias took the .380 caliber gun that Garcia kept between the mattresses on his bed. Macias and Garcia went to the house of a man named Max, another friend of Macias's. There, they overheard Max's neighbors laughing about "how they just punked" Macias at the bar. Macias told Garcia to get Macias's own gun, a Colt .38 super, from someone else's house, and Garcia complied. Macias was angry to the point of paranoia. Garcia and Macias walked home. Garcia testified that he had the .380 and Macias had the .38 super. About fifteen minutes later, they were sitting on the porch, and a car slowly approached. Macias fired once into the car. Garcia testified that he also fired once at the car. Macias walked into the street and fired twice more into the car.

{4} One of the shots struck and killed the car's driver, Wilfred Salas. One bullet was found inside Salas's head. Investigators found three other fired cartridges at the scene. Two were from a .38 super, and one was from a .380. An expert witness testified that the .38 super ammunition had been fired from a different gun than the .380 ammunition.

**DISCUSSION**

**A. TESTIMONY BY DR. KRINSKY DID NOT VIOLATE THE CONFRONTATION CLAUSE.**

3

{5} Macias argues that the testimony of forensic pathologist Clarissa Krinsky, who did not actually examine Salas's body, violated his right under the Sixth Amendment to confront witnesses against him. U.S. Const. amend. VI. We review Confrontation Clause claims de novo. *State v. Lasner*, 2000-NMSC-038, ¶ 24, 129 N.M. 806, 14 P.3d 1282. Under the Confrontation Clause, testimonial statements from an out-of-court witness may not be introduced against a defendant unless the witness is unavailable to testify, and the defendant has had a prior opportunity to cross-examine the witness. *State v. Zamarripa*, 2009-NMSC-001, ¶ 23, 145 N.M. 402, 199 P.3d 846 (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).

{6} We recently addressed a similar claim in *State v. Navarette*, 2013-NMSC-___, ¶ 4, ___ P.3d ___ (No. 32,898, Jan. 17, 2013). In *Navarette*, the defendant had been convicted of murder based in part on the testimony of a forensic pathologist who had neither performed nor been present for the victim's autopsy. *Id.* ¶¶ 2-3. The examining pathologist's report was not entered into evidence, but the testifying pathologist based portions of his testimony on the report and repeated assertions found within it. *Id.* ¶¶ 5-6. We determined that the examining pathologist's opinions, introduced into court by the testifying pathologist, were testimonial. *Id.* ¶ 17. We held that because the testifying pathologist had "related testimonial hearsay from [the

4

examining pathologist] to the jury, and it was not established that [the examining pathologist] was unavailable and Navarette had a previous opportunity to cross-examine" her, Navarette's rights under the Confrontation Clause were violated. *Id.* ¶ 23. We vacated his conviction on that basis. *Id.*

{7}     However, we were clear in *Navarette* that not "all material contained within an autopsy file is testimonial and therefore inadmissible." *Id.* ¶ 22. "[A]n expert witness may express an independent opinion regarding his or her interpretation of raw data without offending the Confrontation Clause." *Id.* We specifically noted that it was acceptable for a non-examining pathologist to testify at trial based on his or her examination of photographs and other record evidence. *Id.*

{8}     In the present case, Dr. Krinsky did not perform the autopsy, nor was she present for it.   Instead, she testified based on her review of the examining pathologist's report and the medical file kept in the case. Macias objects in particular to Dr. Krinsky's testimony that the bullet removed from the victim's head weighed 130 grains. This weight indicated that the bullet was a .38 super, meaning that it came from Macias's gun rather than Garcia's. Macias argues that "the question of precisely which bullet killed Mr. Salas was of particular importance to Defendant's essential defense that he was not present for the shooting and that Mr. Garcia was likely the one

5

who actually fired at Mr. Salas."

**{9}** At trial, the defense raised a Confrontation Clause objection at the beginning of Dr. Krinsky's testimony. Although this Court had not yet issued an opinion in *Navarette*, the trial court considered the objection and reached the same conclusion that we did: Dr. Krinsky was permitted to testify, but she could express only her own independent conclusions based on the underlying data contained in the autopsy file. *See Navarette*, 2013-NMSC-___, ¶ 22. Dr. Krinsky testified on that basis. The bullet in question was part of the underlying raw data; it was recovered and introduced in court. Macias did not object to Dr. Krinsky's testimony about the weight of the bullet or otherwise suggest that she was not stating her own opinions and observations. Because Dr. Krinsky's testimony was explicitly limited to her independent conclusions, we hold that her testimony in its entirety was acceptable under *Navarette*. *Id.*

**{10}** Furthermore, even if Dr. Krinsky did not have an opportunity to examine and weigh the bullet independently, any error in her testimony was harmless. According to Garcia's testimony, Macias was armed with the .38 super and Garcia with the .380, and they fired at the victim's car in concert. If the jury had believed Macias's defense that he was not present for the shooting, the particular bullet found in the victim's

skull would have been immaterial. In addition, if the jury believed that Macias and Garcia fired together at the car, it is legally irrelevant whose bullet ultimately struck the victim. Macias and Garcia together committed the predicate offense of firing at a vehicle and the victim died; they were therefore both guilty of felony murder, regardless of who fired the fatal shot. *See* UJI 14-2821 NMRA (explaining the circumstances under which an accomplice may be convicted of felony murder). The jury was instructed on a theory of accomplice liability for felony murder. As a result, even if testimony about the weight of the bullet violated the Confrontation Clause, there is no reasonable possibility that the error contributed to the jury's decision to convict Macias. *See Tollardo*, 2012-NMSC-008, ¶ 45 (describing harmless error standard for constitutional error).

**B.      THE JURY WAS PROPERLY INSTRUCTED ON ALL COUNTS.**

{11}      The jury was given uniform jury instructions on both felony murder, UJI 14-202 NMRA, and shooting at a motor vehicle resulting in great bodily harm, UJI 14-344 NMRA, among other offenses. Macias argues that the jury should not have been instructed on both offenses at the outset of deliberation, and that "submission of both instructions [was] unfairly prejudicial." Because a defendant cannot be convicted of both felony murder and the predicate felony, *State v. Frazier*, 2007-NMSC-032, ¶ 1,

142 N.M. 120, 164 P.3d 1, Macias argues that "even offering the jury the possibility of convicting on both crimes in the same set of jury instructions is legally improper and prejudicial."[1]

{12}    However, the only source of law Macias cites for this argument is the Court of Appeals' statement that we review jury instructions to "determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Gonzalez*, 2005-NMCA-031, ¶ 19, 137 N.M. 107, 107 P.3d 547 (internal citations and quotation marks omitted). Macias cites no other support, and the facts in *Gonzalez* were notably different. In *Gonzalez*, the trial court had failed to instruct the jury on an essential element of the crime, *id.* ¶ 20, and the case does not address the propriety of giving a jury multiple instructions at the same time.

{13}    The uniform jury instruction on felony murder requires the trial court to instruct the jury on the predicate felony, but it contains no indication that the felony murder instruction must be given at a different time. UJI 14-202 n.3. We presume that the uniform jury instructions are correct statements of the law. *State v. Parish*, 118 N.M. 39, 47, 878 P.2d 988, 996 (1994). Without evidence that the instructions were

---

[1]The State contends that this argument was not properly preserved. However, because this argument is easily addressed on its merits, we assume without deciding that the issue was preserved.

confusing or misleading, we have no reason to override this presumption.

**C.  PROSECUTORS DID NOT COMMIT MISCONDUCT AMOUNTING TO REVERSIBLE ERROR.**

**{14}** Macias alleges that two incidents of prosecutorial misconduct during his trial warrant reversal of his convictions.  First, he argues that by referring to a "trial transcript" when refreshing a witness's memory, the prosecutor improperly informed the jury that Macias had been tried and convicted once before.  Macias cites no authority for the proposition that this type of comment rises to the level of reversible error, and we decline to review an argument that is unsupported by authority.  *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

**{15}** Second, Macias argues that the State briefly displayed a PowerPoint slide during its closing that drew attention to Macias's choice not to testify at trial.  The slide apparently read, "All the aforementioned testimony is true and corroborated by Robert [Macias], and Robert is incriminated."  Macias interprets this as a comment on his choice to testify in the first trial and not to testify in the trial at issue.

**{16}** "Comment by the prosecutor upon a defendant's failure to testify violates the privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments."  *State v. Clark*, 108 N.M. 288, 302, 772 P.2d 322, 336 (1989), *overruled on other grounds by State v. Henderson*, 109 N.M. 655, 659, 789 P.2d 603,

9

607 (1990), *overruled by Clark v. Tansy*, 118 N.M. 486, 493, 882 P.2d 527, 534 (1994). When evaluating allegations that prosecutors made such comments, we ask "whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Clark*, 108 N.M. at 302, 772 P.2d at 336.

{17} The comments in this case do not violate the *Clark* standard. The slide did not directly refer either to Macias's earlier trial or to his failure to testify in the second trial. As the State points out, statements made by Macias were admitted into evidence through the testimony of other witnesses. Therefore, there was no reason for the jury to think that the phrase "the . . . testimony is . . . corroborated by Robert [Macias]" was an oblique reference to Macias's testimony or lack thereof. The slide did not create reversible error.

**D. ERRORS IN THE AGGREGATE DID NOT RENDER MACIAS'S TRIAL UNFAIR.**

{18} Finally, Macias argues that errors in the aggregate denied him his right to a fair trial. However, the doctrine of cumulative error "cannot be invoked if no irregularities occurred, or if the record as a whole demonstrates that a defendant received a fair trial." *State v. Martin*, 101 N.M. 595, 601, 686 P.2d 937, 943 (1984). Because our review has not uncovered any irregularities, and because the record as a whole

10

demonstrates that Macias received a fair trial, we decline to vacate Macias's conviction on the basis of cumulative error.

**CONCLUSION**

{19} Because the issues raised in Macias's appeal are without merit, we affirm his conviction for felony murder.

{20} **IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**