This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39266**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**CHRISTOPHER JOHNSON,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Daniel A. Bryant, District Judge**

Raúl Torrez, Attorney General
Cole P. Wilson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Following a jury trial, Christopher Johnson (Defendant) was convicted of four counts of aggravated assault on a peace officer by use of a deadly weapon, contrary to NMSA 1978, Section 30-22-22 (1971) (Counts 1-4); aggravated fleeing a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1 (2003, amended 2022) (Count 5); possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23 (2011) (Count 6); driving while under the influence of intoxicating liquor (impaired), contrary to NMSA 1978, Section 66-8-102(A) (2016) (Count 7); driving on a

suspended license, contrary to NMSA 1978, Section 66-5-39(2019) (Count 8); possession of an open container, contrary to NMSA 1978, Section 66-8-138 (1991) (Count 9); and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1 (2019, amended 2022) (Count 10).

{2}     On appeal, Defendant argues that (1) insufficient evidence supports his convictions for aggravated assault on a peace officer, (2) instructional error requires reversal of the aggravated assault of a peace officer convictions, (3) the district court should have given the jury an instruction for the lesser included offense of following too closely as to the aggravated assault on a peace officer charges,[1] (4) the district court should have granted a mistrial, (5) the district court coerced the guilty verdict, and (6) Defendant's conviction for driving on a suspended license should be reduced to reflect the amended charge. We agree that Defendant's conviction for driving on a suspended license must be changed to reflect the amended charge of driving without a license and agree that one of Defendant's convictions for aggravated assault on a peace officer is not supported by sufficient evidence. Otherwise, we affirm.

## BACKGROUND

{3}     Because this is an unpublished memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we omit a background section and leave the discussion of the facts for our analysis of the issues.

## DISCUSSION

### I.     Sufficiency of the Evidence

{4}     We first consider whether the State presented sufficient evidence to support each of Defendant's convictions for aggravated assault on a peace officer. Defendant argues that the State failed to prove that he acted with the requisite intent for aggravated assault on a peace officer due to his extreme level of intoxication. Defendant limits his argument on appeal to challenging whether sufficient evidence supported a finding of

---

1Related to this issue, Defendant raises a subissue of ineffective assistance of counsel. However, Defendant mentions this issue in passing and does not fully develop his argument. Consequently, we will not consider this issue. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be"). Additionally, if we were to review this issue, it readily appears from our review of the record that Defendant has failed to make a prima facie case for ineffective assistance of counsel and the issue is more appropriately dealt with via a writ of habeas corpus. "Our Supreme Court has expressed a preference that ineffective assistance of counsel claims be adjudicated in habeas corpus proceedings, rather than on direct appeal." *Id.*; *See Duncan v. Kerby*, 1993-NMSC-011, ¶ 4, 115 N.M. 344, 851 P.2d 466; *State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494. "This preference stems from a concern that the record before the [district] court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." *State v. Schoonmaker*, 2008-NMSC-010, ¶ 31, 143 N.M. 373, 176 P.3d 1105 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Consaul*, 2014-NMSC-030, ¶ 34, 332 P.3d 850.

general criminal intent.[2] Defendant specifically asserts that his only intent was to flee from police and not to threaten or assault them. We conclude that sufficient evidence supports the verdict. We explain.

**{5}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). In reviewing the sufficiency of the evidence, we begin by viewing "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). We then consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted).

**{6}** "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. At trial, the jury was instructed, based on UJI 14-2202 NMRA, that to find Defendant guilty of aggravated assault on a peace officer by use of a deadly weapon, the State was required to prove the following elements beyond a reasonable doubt:

(1) [D]efendant accelerated his motor vehicle towards the back of [the officer's] patrol unit;

(2) At the time, [the officer] was a peace officer and was performing duties of a peace officer;

(3) [D]efendant knew [the officer] was a peace officer;

(4) [D]efendant's conduct caused [the officer] to believe [D]efendant was about to intrude on [the officer's] bodily integrity or personal safety by touching or applying force to [the officer] in a rude, insolent or angry manner;

(5) [D]efendant's conduct threatened the safety of [the officer] or challenged the authority of [the officer];

(6) A reasonable person in the same circumstances as [the officer] would have had the same belief;

---

2We use the terms "criminal intent," "intent," and "mens rea" interchangeably throughout this opinion to refer to the state of mind required for a defendant to commit a crime and more specifically the crime of aggravated assault on a peace officer.

(7) [D]efendant used a deadly weapon.

Additionally, the district court gave the jury a separate instruction on general criminal intent which read:

> In addition to the other elements of aggravated assault on peace officer by use of a deadly weapon . . . the [S]tate must prove to your satisfaction beyond reasonable doubt that [D]efendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be crime. Whether [D]efendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, his conduct, and any statements made by him.

*See* UJI 14-141 NMRA. Because Defendant limits his sufficiency of the evidence challenge to the intent element of each charge of aggravated assault on a peace officer, we must review each charge to determine whether any rational trier of fact could have found that Defendant acted with general criminal intent. *See Cunningham*, 2000-NMSC-009, ¶ 26.

**{7}**     We begin by determining what mens rea is required for these crimes. When a statute does not tell us what mens rea is required for a conviction, we "presume that the only mens rea involved is that of conscious wrongdoing—commonly referred to as 'general criminal intent.'" *State v. Branch*, 2018-NMCA-031, ¶ 15, 417 P.3d 1141 (citation omitted). Indeed, specific intent is not an essential element of aggravated assault on a peace officer. *Cf. id.* ("[S]pecific intent is not an essential element of aggravated assault."). Moreover, our long-standing precedent supports this conclusion. *See, e.g.*, *State v. Mascarenas*, 1974-NMCA-100, ¶ 11, 86 N.M. 692, 526 P.2d 1285 (noting that the intent required for aggravated assault is that of "conscious wrongdoing").

**{8}**     "[G]eneral criminal intent" means "'purposely do[ing] an act which the law declares to be a crime.'" *State v. Franco*, 2019-NMCA-057, ¶ 16, 450 P.3d 439 (quoting UJI 14-141 NMRA). "[G]eneral criminal intent is satisfied if the [s]tate can demonstrate beyond a reasonable doubt that the accused purposely performed the act in question." *State v. Gonzalez*, 2005-NMCA-031, ¶ 23, 137 N.M. 107, 107 P.3d 547 (alterations, internal quotation marks, and citation omitted). "Because an individual's intent is seldom subject to proof by direct evidence, intent may be prove[n] by circumstantial evidence." *State v. Allen*, 2000-NMSC-002, ¶ 65, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted); *see also* UJI 14-141 (stating that "[w]hether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, [and] his conduct [and any statements made by him]").

**{9}**     Further, with respect to aggravated assault on a peace officer, our case law does not require that a defendant intend to injure the victim. Rather, it requires that the

defendant's conduct caused the victim to believe that the defendant is about to batter the victim—that a reasonable person in the position of the victim would believe that they were about to be battered—and that the defendant's conduct threatened the safety of the victim. *See State v. Morales*, 2002-NMCA-052, ¶ 36, 132 N.M. 146 (noting that "[t]o convict [a d]efendant of aggravated assault on a peace officer, the [s]tate was not required to prove that [the d]efendant intended to injure or even frighten [the officer]"), *overruled on other grounds by State v. Tollardo*, 2012-NMSA-008, ¶ 37 n.6, 275 P.3d 110." Instead, the state was only required to prove that "[the d]efendant's conduct caused [the officer] to believe [the d]efendant was about to hit him with his vehicle, that a reasonable person would have believed he was about to be hit by the vehicle, and that [the d]efendant's conduct threatened [the officer's] safety". *Tollardo*, 2012-NMSC-008, ¶ 37 n.6.

**{10}** Here, the jury not only heard the testimony of the four officers who were allegedly assaulted by Defendant, they also saw dash camera and body camera videos of the incident showing various parts of the pursuit as well as Defendant's arrest. As a result, the jury had ample evidence to determine whether Defendant assaulted each of the officers. What's more, the jury had more than enough evidence before it to judge the credibility of their accounts and to determine if Defendant had the intent necessary to assault the officers. *See State v. Smith*, 2001-NMSC-004, ¶ 16, 130 N.M. 117, 19 P.3d 254 (explaining that it is the fact-finder that determines credibility). We turn now to consider the evidence of intent as to each count of aggravated assault on a peace officer for which Defendant was convicted.

**{11}** Count 1 relates to Deputy Charlie Evans. Deputy Evans testified at trial that upon responding to the pursuit he got in front of Defendant's van with his lights and sirens activated. Despite increasing his speed to avoid being hit by Defendant, Defendant kept getting closer to Deputy Evans. Eventually, Defendant got so close that Deputy Evans had to swerve out of Defendant's way to avoid being hit by Defendant. Deputy Evans was afraid that Defendant was going to try and perform a "pit maneuver" on him, which would likely cause him to roll over at highway speeds. Deputy Evans testified that he was afraid of being injured or killed by Defendant.

**{12}** Count 2 relates to Deputy William Warren. Deputy Warren testified that he laid out spike strips to try to stop Defendant's vehicle. Defendant avoided the strips by swerving towards Deputy Warren. Deputy Warren said that he did not think Defendant was trying to hit him but was only trying to avoid the spike strips. Defendant came within a foot of hitting Deputy Warren. So close, that Deputy Warren testified he felt the air pressure of Defendant's van as it passed him.

**{13}** Count 3 relates to Officer Jennifer Phillips. Officer Phillips was on patrol in Carrizozo before she responded to the pursuit. Officer Phillips positioned herself three miles outside of Carrizozo hoping she could help stop the pursuit before it got to the busier, more populated part of Highway 380. Officer Phillips stayed close to the guardrail for cover, waited for traffic to pass, and attempted to lay out spike strips to stop Defendant's van. As she was preparing to pull the spike strips in place, Deputy

Evans screamed over the radio for Officer Phillips to get out of the way. Hearing this, she looked up and saw Defendant driving right at her. She immediately jumped over the guardrail to avoid being hit. Upon jumping over the guardrail, Officer Phillips fell down a hill and injured her shoulder. Officer Phillips stated that when she jumped over the guardrail, she had no idea what was on the other side, but she wanted to live to see her children. Officer Phillips told the jury that if she had stayed where she was, she would not be there talking to them.

**{14}** Finally, Count 4 relates to Sheriff Robert Shepperd. Sheriff Shepperd testified that he did not want Defendant to go through town, so he sped past Defendant's van to set up a "rolling roadblock." Defendant reacted by trying to ram the back of Sheriff Shepperd's vehicle. Sheriff Shepperd accelerated his vehicle to pull away from Defendant, but Defendant pulled up alongside and drove at the side of Sheriff Shepperd's vehicle. Sherriff Sheppard told the jury that this scared him, and he sped up to gain more distance from Defendant. Sheriff Sheppard also told the jury what he observed what happened to Officer Phillips and Deputy Warren. Sherriff Shepperd stated that he saw Defendant swerve his vehicle towards Officer Phillips and almost hit her. He also saw Defendant's vehicle come within a foot of hitting Deputy Warren.

**{15}** From this testimony, the jury found Defendant guilty of each of these counts thereby finding that Defendant acted with general criminal intent as instructed by the district court. *See Cunningham*, 2000-NMSC-009, ¶ 26 (We consider whether "*any* rational trier of fact could have found the essential elements.").

**{16}** Defendant's challenge that he was too intoxicated to form the requisite general criminal intent for aggravated assault would require us to reweigh the evidence on appeal. This we will not do. *See State v. Wright*, 2022-NMSC-009, ¶ 20, 503 P.3d 1161 ("The reviewing court does not reweigh evidence on appeal."). However, from our review of the evidence, we conclude that Defendant's conviction as to Count 2, related to Deputy Warren, is not supported by sufficient evidence. We explain.

**{17}** The evidence produced by the State below is lacking with respect to a key element of Count 2: that Defendant's conduct caused Deputy Warren to believe Defendant was about to intrude on his bodily integrity. *See Montoya*, 2015-NMSC-010, ¶ 52 (stating, "the test for sufficiency is not whether the State presented some particular piece of evidence that would bolster the findings of guilt, but rather whether the evidence the State did present was sufficient to support the findings."). Deputy Warren testified at trial that he did not think Defendant was trying to hit him but was only trying to avoid the spike strips. In other words, that Defendant's conduct did not cause Deputy Warren to believe Defendant was about to intrude on Deputy Warren's bodily integrity or personal safety by touching or applying force to Deputy Warren in a rude, insolent, or angry manner—as the jury instructions required. In fact, from our review of the record, we do not find any evidence that Deputy Warren was placed in fear that he was going to be hit by Defendant's vehicle. From this evidence, we conclude that no rational trier of fact could have found that this element of the crime of aggravated assault on a peace officer was proven by the State beyond a reasonable doubt. *See Cunningham*, 2000-

NMSC-009, ¶ 26 (stating that we consider whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (internal quotation marks and citation omitted)). Therefore, because Count 2 is not supported by substantial evidence, we reverse and vacate Defendant's conviction for aggravated assault against Deputy Warren. *See Consaul*, 2014-NMSC-030, ¶ 93 (reversing and vacating defendant's conviction for child abuse due to lack of sufficient evidence). Otherwise, we affirm.

## II.    Instructional Error

### A.    UJI 14-2202

**{18}**    Defendant next argues that the order of the elements contained in UJI 14-2202—the uniform jury instruction for aggravated assault on a police officer—misstates the law due to the order in which essential elements 4, 5, and 6 are set out in the instruction. Defendant concedes that he did not object to the challenged instructions at trial; therefore, we review for fundamental error. *See State v. Osborne*, 1991-NMSC-032, ¶¶ 35, 38, 111 N.M. 654, 808 P.2d 624 (explaining that the failure to instruct the jury on the essential elements of an offense may constitute fundamental error, even if the defendant failed to object to an inadequate instruction).

**{19}**    Determining fundamental error is a two-step inquiry: first, we determine whether error occurred. Then we determine whether this error is fundamental. *See State v. Ocon*, 2021-NMCA-032, ¶¶ 7-8, 493 P.3d 448. To determine whether error occurred, we ask "whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633. Jury instructions cause confusion or misdirection when, "through omission or misstatement," they do not provide "an accurate rendition" of the essential elements of the law. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

**{20}**    If we determine that a reasonable juror would have been confused or misdirected by the instructions given, our fundamental error analysis requires us to "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 20, 150 N.M. 224, 258 P.3d 1016 (alteration, internal quotation marks, and citation omitted). "If such a miscarriage of justice exists, we deem it fundamental error." *State v. Anderson*, 2016-NMCA-007, ¶ 9, 364 P.3d 306.

**{21}**    Again, the jury was instructed, based on UJI 14-2202, that to find Defendant guilty of aggravated assault on a peace officer by use of a deadly weapon, the State was required to prove the following elements beyond a reasonable doubt:

> (1) [D]efendant accelerated his motor vehicle towards the patrol unit of [the officer];

(2) At the time, [the officer] was a peace officer and was performing duties of a peace officer;

(3) [D]efendant knew [the officer] was a peace officer;

(4) [D]efendant's conduct caused [the officer] to believe [D]efendant was about to intrude on [the officer's] bodily integrity or personal safety by touching or applying force to [the officer] in a rude, insolent or angry manner;

(5) [D]efendant's conduct threatened the safety of [the officer] or challenged the authority of [the officer];

(6) A reasonable person in the same circumstances as [the officer] would have had the same belief;

(7) [D]efendant used a deadly weapon.

**{22}** Defendant argues that element five disrupts "the same belief" requirement of element six. The State argues, however, that the "reasonable person" in element six is placed in "the same circumstances" as Victim in elements four *and* five. Thus, our analysis requires us to ask whether the placement of the reasonable person requirement in UJI 14-2202 would confuse or misdirect a reasonable juror. *See Barber*, 2004-NMSC-019, ¶ 19 ("We must determine whether a reasonable juror would have been confused or misdirected by the jury instruction."). It is well established that instructions that follow the language of uniform jury instructions are "presumptively valid." *State v. Taylor*, 2021-NMCA-033, ¶ 21, 493 P.3d 463 (internal quotation marks and citation omitted); *see also State v. Ortega*, 2014-NMSC-017, ¶ 32, 327 P.3d 1076 (stating that "[u]niform jury instructions are presumed to be correct").

**{23}** Here, it is clear that element 6, the same belief requirement, applies to element 4. *See* UJI 14-2202. This is so because both elements 4 and 6 use the word "believed" (element 4) or "belief" (element 6) obviously and logically referring to the belief the officer who was being assaulted had at the time of the assaultive acts by Defendant, whereas element 5 contains no reference to a belief by any person subjective or objective. Element 5 is wholly unrelated to the belief discussed in elements 4 and 6 and has to do only with how Defendant's assault threatened the officer. Because the instructions provided an accurate rendition of the law and does not confuse or misdirect a reasonable juror, we conclude that no error occurred. *See Benally*, 2001-NMSC-033, ¶ 12; *Barber* 2004-NMSC-019, ¶ 19.

## B.    Lesser Included Offense

**{24}** Defendant next argues that as to Counts 1 and 4, the district court should have instructed the jury on the motor vehicle code penalty assessment misdemeanor of

following too closely[3], contrary to NMSA 1978, Section 66-7-318(A) (2021), as a lesser included offense of the third-degree felony offense of aggravated assault on a peace officer. However, the State contends that Defendant failed to preserve this issue. We agree that Defendant did not properly preserve this issue for our review.

**{25}** For a matter to be reviewed by this Court it must be properly preserved on the record. This requires a proper objection or tendering of a proper instruction. *See State v. Romero*, 1974-NMCA-015, ¶ 27, 86 N.M. 99, 519 P.2d 1180.

**{26}** Here, Defendant neither submitted a written instruction nor placed on the record an oral rendition of his proposed instruction as to this offense.[4] At most, defense counsel made a perfunctory and superficial attempt to "make a record" at the jury instruction conference that the jury should be instructed as to this lesser offense and then only as to Count 4 and not at all as to Count 1. At the jury instruction conference concerning Counts 1 and 4, the following exchange occurred between the district court, defense counsel, and the prosecutor:

**{27}** As to Count 1:

Court: State's request number 6, the elements instruction for aggravated assault in Count 1, Deputy Evans.

Defense Attorney: No objections.

As to Count 4:

Court: State's request number 9, aggravated assault on a peace officer as to Count 4, Sheriff Sheppard.

Defense Attorney: Your Honor again I gotta make a record (inaudible) I would ask if we could have the lesser included to that of following too close.

---

3NMSA 1978, Section 66-8-116 (2019) lists a violation of Section 66-7-318 as a penalty assessment misdemeanor.

4Our review of the Uniform Criminal Jury Instruction, specifically Chapter 45, Traffic Offenses, reveals that there is no Supreme Court approved uniform jury instruction for the traffic offense of following too closely. Consequently, for the district court to have provided the jury an instruction for this offense, Defendant would have had to create it and submit it to the district court for consideration by the district court and the prosecution. *See* Rule 5-608 NMRA (setting forth the procedures that a party is to follow if they wish for the jury to be instructed as to a certain crime or issue). Specifically, Rule 5-608(A) provides that "[t]he court must instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury," and Rule 5-608(B) provides that "[a]t the close of the defendant's case, or earlier if ordered by the court, *the parties shall tender requested instructions in writing*." (Emphasis added.). Finally, as to this point, Rule 5-608(D) states that "[e]xcept as provided in Paragraph A of this rule, for the preservation of error in the charge, objection to any instruction given must be sufficient to alert the mind of the court to the claimed vice therein, or*, in case of failure to instruct on any issue, a correct written instruction must be tendered before the jury is instructed*." (Emphasis added.).

Court: Give me your instruction.

Defense Attorney: I, Your Honor I didn't prepare them.

Court: No instruction tendered. Prosecutor, what's your position?

Prosecutor: Judge. I would object.

Court: Defense attorney you haven't tendered an instruction so

Defense Attorney: Your Honor I was waiting to see what was put on

Court: Defense Attorney you don't do that in any other court do you?

Defense Attorney: No. I don't your honor.

Court: Alright. You don't do that here.

**{28}** Based on this record, as to Count 1, we note that defense counsel did not object to the State's requested instruction, and he did not make any request for a lesser included offense instruction. As to Count 4, we note that defense counsel did not object to the State's requested instruction, that defense counsel did not tender a written instruction for the lesser included offense that he was requesting, that defense counsel did not ask the district court for time to prepare an instruction, and that defense counsel did not ask for permission to dictate onto the record the language for the instruction he was asking the district court to give to the jury. Under these circumstances, we conclude Defendant did not preserve this claim for our review. *See State v. Bedoni*, 2003-NMCA-009, ¶ 7, 133 N.M. 257, 62 P.3d 348 (holding that where a defendant "neither tendered a written instruction nor orally dictated one" and "[t]he record does not show that [the d]efendant informed the [district] judge of the specific language he wanted in a modified instruction," the issue was not preserved for appellate review).

### III.    Mistrial

**{29}** Next, Defendant contends that the district court erred by failing to declare a mistrial after the jury heard that Defendant was being detained during the trial Because there is no evidence of prejudice to Defendant stemming from the district court's statement, we affirm.

**{30}** A district court's ruling on a motion for a mistrial is addressed to the sound discretion of the district court and will not be disturbed absent a showing of abuse of discretion. *See State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516. The district court abuses its discretion in ruling on a motion for a mistrial if it acts in an "obviously erroneous, arbitrary, or unwarranted manner," *id.* ¶ 50 (internal quotation marks and citation omitted), or when the decision is "clearly against the logic and effect

of the facts and circumstances before the court." *State v. Lucero*, 1999-NMCA-102, ¶ 32, 127 N.M. 672, 986 P.2d 468 (internal quotation marks and citation omitted).

**{31}** Whether the jury heard that Defendant was being detained is a disputed issue in this case. Defendant claims that while the jury was still present in the courtroom at the end of the first day of trial, the district court stated, "Detention center, I'd like [Defendant] here, okay?" Immediately after this statement, the district court gave the jury instructions for its recess. Defendant moved for a mistrial based on the district court's statement. The district court was not sure that the jury heard this statement but offered to give the jury a curative instruction or let Defendant poll the jury. Defendant declined the district court's offer.

**{32}** Absent a showing of intentional misconduct, a curative instruction or the offer of a curative instruction is enough to establish that the Defendant was not prejudiced by the statement made in the jury's hearing. *See State v. Armijo*, 2014-NMCA-013, ¶ 9, 316 P.3d 902 (noting that curative instructions generally "sufficiently cure any prejudicial effect which might otherwise result" from inadmissible evidence (internal quotation marks and citation omitted)); *State v. Fry*, 2006-NMSC-001, ¶ 53, 138 N.M. 700, 126 P.3d 516 ("[F]or an inadvertent remark of the type at issue in this case, we have held that the trial court's offer to give a curative instruction, even if refused by the defendant, is sufficient to cure any prejudicial effect."). Thus, because Defendant declined the district court's offer for a curative instruction or to poll the jury, we find that there was no showing of prejudice to the Defendant and no abuse of discretion by the district court in refusing to grant a mistrial.

**{33}** Moreover, our Supreme Court has held that these situations must be more than inadvertent or insignificant. *See State v. Holly*, 2009-NMSC-004, ¶ 40, 145 N.M. 513. For example, in *Holly* the defendant claimed that one of the jurors may have seen him being escorted to a detention facility on the evening of the first day of trial. *See id*. Our Supreme Court concluded that because "it [was] unclear whether any exposure actually occurred, or if it did, that it was anything more than 'inadvertent or insignificant'" there was no error. *Id*. ¶ 42.

**{34}** Consequently, we conclude that the district court did not abuse its discretion in refusing to declare a mistrial under the circumstances of this case. *See State v. Romero*, 2019-NMSC-007, ¶ 23, 435 P.3d 1231 (affirming trial court's denial of motion for mistrial where defendant failed to present evidence of juror impartiality).

## IV.    The "Shotgun" Instruction

**{35}** Defendant next argues that the district court coerced a guilty verdict in a manner equivalent to a "shotgun instruction." Defendant contends that although this case is not a normal jury deadlock case, in which a "shotgun" instruction usually comes into play, this case still presents the classic concerns of a shotgun instruction because the jury was pressured to reach a verdict under "impossible circumstances." *See State v. Travis*, 1968-NMCA-036, ¶ 8, 79 N.M. 307, 442 P.2d 797 (recognizing that use of the then-

approved shotgun instruction would be improper if it "coerces the jury into agreement or tends to unduly hasten the jury in its consideration of the case"). The impossible circumstances Defendant refers us to are various remarks about the start of the coronavirus pandemic, which we will detail below in our analysis. As we explain below, we conclude that the district court did not coerce the jury or abuse its discretion when it made statements to the jury about the coronavirus generally.

**{36}** Shotgun instructions are instructions from the district court to a jury "that coerces a jury into agreement or tends to unduly hasten the jury in its consideration of the case." *Id.* ¶ 8. The shotgun instruction is "prohibited by our New Mexico Supreme Court" out of a concern for the "potentially coercive effect it has on holdout jurors to abandon their convictions to arrive at a verdict with the majority." *State v. Laney*, 2003-NMCA-144, ¶ 52, 134 N.M. 648, 81 P.3d 591.

**{37}** We review whether the claim of a shotgun instruction affected the verdict for abuse of discretion. *See State v. White*, 1954-NMSC-050, ¶ 23, 58 N.M. 324, 270 P.2d 727. The district court abuses its discretion if it acts in an "obviously erroneous, arbitrary, or unwarranted manner," *Fry*, 2006-NMSC-001, ¶ 50 (internal quotation marks and citation omitted), or when the decision is "clearly against the logic and effect of the facts and circumstances before the court." *State v. Lucero*, 1999-NMCA-102, ¶ 32, 127 N.M. 672, 986 P.2d 468 (internal quotation marks and citation omitted). "If a [district] court coerces the jury, then it violates the defendant's 'right to a fair and impartial trial.'" *State v. Lymon*, 2021-NMSC-021, ¶22, 488 P.3d 610 (internal quotation marks and citation omitted). This violation is a reversible error that requires a new trial.

**{38}** Here, Defendant claims the district court coerced the jury when (1) during voir dire, the district court asked if anyone was "sitting here . . .thinking about the coronavirus and . . . thinking 'I don't want to be in this jury trial . . . and I'm going to be worried about all of those things?'" but no one spoke up; and (2) during the second day of trial, the district court informed the jury that he had a mandatory meeting at lunch concerning "an order from the Supreme Court suspending criminal jury trials after [the court] finish[ed] this trial. Because we were in the midst of this trial when the order was issued, it tells [the court] to complete this case and then suspend criminal jury trials." Ultimately, the jury took less than an hour to reach a verdict.

**{39}** We conclude that these statements by the district court were not coercive and did not cause any juror to abandon their convictions to arrive at a verdict. In *State v. Juan*, after the jury commenced its deliberations, the jury asked about a hung jury or nonverdict. 2010-NMSC-041, ¶¶ 12-13, 148 N.M. 747, 242 P.3d 314. The district court did not respond to the jury's question and the jury reached a guilty verdict. *Id.* ¶ 15. Our Supreme Court concluded on appeal that the district court's failure to issue a supplementary instruction coerced the jury into reaching a verdict and reversed Defendant's conviction. *Id.* ¶ 19. In *State v. McCarter*, the jury sent a note to the judge indicating it was deadlocked, eleven to one. 1980-NMSC-003, ¶ 3, 93 N.M. 708, 604 P.2d 1242, *holding modified on other grounds by State v. Baca*, 1992-NMSC-055, ¶ 3, 114 N.M. 668, 845 P.2d 762. The district court told the jury that they "must consider

further deliberations." *McCarter*, 1980-NMSC-003, ¶ 4. Less than a half-hour later, the jury returned a guilty verdict, and when the district court asked each juror if this was their verdict, one juror said, "Reluctantly." *Id.* ¶ 5. Based on this, our Supreme Court found that the district court's note to the jury was coercive and reversed Defendant's conviction. *Id.* ¶¶ 2, 7, 28.

**{40}** Comparing the statements at issue here, to those typically reviewed by our appellate courts in which they have found the use of shotgun instructions violated Defendant's right to a fair trial, we conclude that the district court did not in any manner coerce the jury or cause a juror to abandon their individual conviction for the purpose of reaching a verdict. At most, the district court was, in the first instance, inquiring of prospective jurors concerning serving as a juror during the COVID-19 pandemic and in the second instance, imparting to the jury information about procedures they would follow due to the impact of COVID-19 on the courts. We find nothing in the record and Defendant has not bought to our attention any evidence that suggests that these statements caused the jury to do anything other than carry out their oath by fully and fairly considering the evidence and rendering a just verdict. *See Laney*, 2003-NMCA-144, ¶ 52 ("The primary concern with a shotgun instruction is the potentially coercive effect it has on holdout jurors to abandon their convictions to arrive at a verdict with the majority.").

## V. Defendant's Conviction for Driving on a Suspended License Shall be Reduced

**{41}** Defendant's final argument relates to his conviction for driving on a suspended license. Defendant argues, and the State concedes, that he was only found guilty of driving without a license, not driving on a suspended license. While we are not bound by the State's concession, *see State v. Montoya*, 2015-NMSC-010, ¶ 58, 345 P.3d 1056, we agree with Defendant and direct the district court to amend the judgment and sentence to reflect the proper charge for which Defendant was convicted: driving without a license.

## CONCLUSION

**{42}** For the above reasons, we reverse and vacate Defendant's conviction as to Count 2, the charge of aggravated assault on a peace officer related to Deputy Warren. We also clarify that Defendant was convicted of driving without a license, not driving on a suspended license. Otherwise, we affirm. We therefore remand this case to the district court to enter an appropriate judgment and sentence consistent with this opinion.

**{43} IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**